**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50305 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00606-RGK-1 |
| v. | |
| ANAHI E. GUTIERREZ, | MEMORANDUM* |
| Movant-Appellant, | |
| ANDREW HARRISON KRAMER, | |
| Defendant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50306 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00606-RGK-1 |
| v. | |
| ROSALINDA KRAMER; STUART KRAMER, M.D.; BLUE MOUNTAIN MANAGEMENT AND MARKETING, INC.; PRIVATE FUNDING MANAGEMENT, INC., | |
| Movants-Appellants, | |

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

ANDREW HARRISON KRAMER,

Defendant.

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted March 6, 2018
Pasadena, California

Before: GRABER, W. FLETCHER, and OWENS, Circuit Judges.

Rosalinda Kramer ("R. Kramer"), Stuart Kramer ( "S. Kramer"), Blue Mountain Management and Marketing, Inc. ("BMM"), Private Funding Management, Inc. ("PFM"), and Anahi Gutierrez ("Gutierrez") (collectively "Appellants") appeal the district court's order denying all but one of their third-party petitions claiming ownership interest in properties listed in a preliminary order of criminal forfeiture. The order arises from Defendant Andrew Kramer's conviction for felonious narcotics trafficking. The district court found that, as to all but one of their petitions, Appellants failed to meet their burden of demonstrating either (a) that they had a cognizable legal interest in the properties that was superior to any interest held by Defendant, or (b) that they were bona fide purchasers of the properties without notice. *See* 21 U.S.C. § 853(n)(6). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

"In a case involving [21 U.S.C.] § 853(n), we review the district court's findings of fact for clear error and its legal conclusions *de novo*." *United States v. Nava*, 404 F.3d 1119, 1127 n.3 (9th Cir. 2005) (citing *United States v. Lester*, 85 F.3d 1409, 1410–11 (9th Cir. 1996)). We review for abuse of discretion a district court's denial of equitable relief, such as Appellants' requests for the creation of resulting and constructive trusts. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1053 (9th Cir. 2000); *Diaz v. San Jose Unified Sch. Dist.*, 861 F.2d 591, 595 (9th Cir. 1988).

1.      Cognizable Legal Interests

The district court did not err in finding that Appellants had no cognizable legal interests in the challenged forfeitable assets. A third-party petitioner may prevail only upon showing, by a preponderance of the evidence, that (A) he possessed a vested or superior legal right, title, or interest in the property at the time the criminal acts began, or (B) he was a bona fide purchaser for value without notice that the property was subject to forfeiture. 21 U.S.C. § 853(n)(6).

*BB&T Branch Funds*

Appellants R. Kramer, S. Kramer, and their entity BMM each claim that their contribution of deposits into a seized bank account established a vested proportional ownership interest, as well as equitable ownership in the form of

3

constructive and resulting trusts. R. Kramer also contends that Defendant's contributions to the account were "intended as repayment" to her. BMM is listed as owner of the seized account; however, evidence shows that the account was initially opened by Defendant and a business partner.

R. Kramer's deposits into the seized account do not show a proportional ownership interest, as R. Kramer was merely a signatory on the account. Moreover, the seized corporate assets of the account's owner, BMM, do not qualify as R. Kramer's personal assets. *See Merco Constr. Eng'rs, Inc. v. Mun. Court*, 581 P.2d 636, 639 (Cal. 1978) ("It is fundamental . . . that a 'corporation is a distinct legal entity separate from its stockholders and from its officers.'" (quoting *Maxwell Cafe, Inc. v. Dep't of Alcoholic Beverage Control*, 298 P.2d 64, 68 (Cal. Dist. Ct. App. 1956))). Nor is there evidence to support R. Kramer's claim that she maintains a superior interest over the account funds because they were loan repayments from Defendant.

A constructive trust is used to remedy fraud when "[o]ne . . . wrongfully detains a thing" or "[o]ne . . . gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act." Cal. Civ. Code §§ 2223, 2224. Neither R. Kramer nor S. Kramer has adduced any evidence to show that

4

their deposits into the account were wrongfully obtained or induced through some form of fraud.

Under California law,

> [w]here a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise.

*Juranek v. Juranek*, 84 P.2d 195, 198 (Cal. Dist. Ct. App. 1938) (quoting Restatement of Law of Trusts § 454).  However, a resulting trust is "not founded on the simple fact that money or property of one [person] has been used by another to purchase property."  *Lezinsky v. Mason Malt Whisky Distilling Co.*, 196 P. 884, 890 (Cal. 1921).  The formation of a resulting trust must be mutually intended between the parties.  *Id.* at 888 ("[I]t will be presumed that as between [the parties] it was intended that the purchase be for the benefit of him who supplied the means with which to make it."); *see also Lloyds Bank Cal. v. Wells Fargo Bank*, 232 Cal. Rptr. 339, 341 (Ct. App. 1986) (explaining that a resulting trust is an intention-enforcing trust because the "trust carries out and enforces the inferred intent of the parties").  R. Kramer produced no evidence of mutual intent that the claimed deposits would benefit her.  *Id.* at 342.

Finally, BMM's claim of superior interest as the account owner fails because the evidence establishes that these funds were the proceeds of narcotics trafficking. *See United States v. Hooper*, 229 F.3d 818, 821–22 (9th Cir. 2000) (explaining that because proceeds of a crime do not exist before the commission of the underlying offense, § 853(n)(6)(A) can never be used to challenge the forfeiture of proceeds).

*Cantlay Property*

Appellants Gutierrez and R. Kramer each claim ownership through proportional interest, resulting and constructive trusts and, alternatively, as bona fide purchasers for value of the Cantlay Property. R. Kramer and S. Kramer's entity PFM also claims ownership of the property as a bona fide purchaser for value. The Cantlay Property was deeded to Defendant through purchase, after which Defendant conveyed the property to Gutierrez through a gift deed that stated he received nothing in return. Gutierrez claims to have then conveyed the property to PFM, though the record shows that title to the property is held solely by Gutierrez and that PFM has only a deed of trust secured by the property.

R. Kramer's claim that her contribution to the purchase price gave her proportional ownership is not supported by the evidence. Defendant's deed conveying full title to Gutierrez makes no mention of a proportional interest. As to the constructive trust claim, there is no evidence that R. Kramer's contribution to

6

the purchasing price was induced through fraud on the part of Defendant or that there was a breach of any fiduciary duty. *Lezinsky*, 196 P. at 886. As to the resulting trust claim, there is no evidence that R. Kramer and Defendant were in agreement that R. Kramer would benefit from the property. *Lloyds Bank*, 232 Cal. Rptr. at 342. The lack of this mutual intention is evinced, *inter alia*, by Defendant's conveyance of full title to Gutierrez. *Id.*

Gutierrez contends that remodeling expenses and property taxes she paid on the property established constructive and resulting trusts. However, Gutierrez has produced neither evidence that she was defrauded into spending money on the property, nor evidence that she put money towards the property's purchase price. *See Juranek*, 84 P.2d at 197–98.

Finally, neither Gutierrez, R. Kramer, nor PFM is a bona fide purchaser of the Cantlay Property. As discussed, Gutierrez' deed explicitly states that she paid nothing in exchange for the property. R. Kramer contributed to the purchase price but did not receive title. And the title obtained by PFM was neither received for value nor obtained prior to the commission of the acts that gave rise to forfeiture. *See* 21 U.S.C. § 853(n)(6)(A).

*Chimineas Property*

R. Kramer and S. Kramer contend that their mortgage, maintenance, and tax payments established their ownership, through proportional interest, constructive and resulting trusts, and as bona fide purchasers of the Chimineas Property.

R. Kramer and S. Kramer failed to show proportional interest, as Defendant deeded title to the property in full to his own entity Nevada External Properties, LLC ("NEP"). R. Kramer and S. Kramer did not show that their payments on the property were induced by fraud or a wrongful act, Cal. Civ. Code §§ 2223, 2224, or that it was mutually intended that they would benefit from the property, forming a resulting trust. *Lloyds Bank*, 232 Cal. Rptr. at 342. Finally, the Chimineas Property was never conveyed to R. Kramer or S. Kramer in exchange for consideration, and R. Kramer began making mortgage payments on the property after Defendant was arrested. 21 U.S.C. § 853(n)(6)(B).

*Hyde Park Property*

R. Kramer contends that payments made for homeowner association dues following Defendant's arrest, generated a resulting and constructive trust in the Hyde Park Property. However, R. Kramer has failed to adduce evidence that she was defrauded into paying the homeowner association fees. Cal. Civ. Code §§ 2223, 2224. Nor has she shown that she contributed to the purchase price of the property or that there was a mutual agreement that she would benefit from the

8

property. *Lloyds Bank*, 232 Cal. Rptr. at 342. Defendant deeded the Hyde Park Property to his entity NEP in November 2012.

*Escrow Funds*

R. Kramer and S. Kramer claim that the litigation costs they incurred in connection with the proposed sale of Defendant's property created constructive and resulting trusts as to the escrow funds that were Defendant's net proceeds from the sale of the property. However, the Kramers have failed to show that they were fraudulently induced into contributing to the litigation costs of this property. Cal. Civ. Code §§ 2223, 2224. There also is no evidence of mutual intention for the Kramers to benefit from the sale of the property. *Lloyds Bank*, 232 Cal. Rptr. at 342. The Kramers admitted that the investment into the escrow account was paid for Defendant's benefit.

*Foothill Property*

S. Kramer and R. Kramer contend that their expenditures made on the Foothill Property created proportional interests, constructive trusts, resulting trusts and, alternatively, that they were bona fide purchasers for value. They also claim that their entity, PFM, was a bona fide purchaser for value. Defendant conveyed the Foothill Property to PFM. The deed specified that "the grantors and the grantees in this conveyance are comprised of the same parties who continue to hold

the same proportionate interest in the property." While the language of the deed suggests there was a proportional or resulting trust interest, the existence of such an interest under state law is defeated by federal law. The deed was not created "*at the time of the commission of the acts which gave rise to the forfeiture of the property.*" 21 U.S.C. § 853(n)(6)(A) (emphasis added). Instead, Defendant deeded the properties to the Kramers' entity in June 2010, *after* the commencement of his drug conspiracy. PFM thus can defeat forfeiture only by establishing, *inter alia*, that it was a "bona fide purchaser for value." *Id.* § 853(n)(6)(B). However there was no evidence presented that PFM contributed its corporate assets toward the purchase price of the property or that PFM was "without cause to believe that the property was subject to forfeiture." *Id.* R. Kramer and S. Kramer also fail to show that they were defrauded into contributing to the down payment and maintenance fees for the property. Cal. Civ. Code §§ 2223, 2224.

2.    Compliance With the Plea Deal

We review de novo whether the Government violated the terms of a plea agreement. *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000). The Government's opposition to Appellants' third-party claims in the ancillary criminal forfeiture proceedings was not a "criminal prosecution" in violation of Defendant's plea agreement. Defendant's agreement included a promise not to prosecute

10

Appellants.  Appellants exercised their right to claim a third-party interest in Defendant's forfeitable assets by compelling an ancillary proceeding, 21 U.S.C. § 853(n)(2), and the Government participated in the proceeding to evaluate Appellants' claims, *id.* § 853(n)(6) & (7).  The Government has not charged Appellants with any crime, has not summoned Appellants into Defendant's case, and has made no formal allegations that any Appellant committed an illegal act.

3.    Federal Appropriations Riders

We review de novo the denial of a motion to dismiss.  *See United States v. Gomez-Rodriguez*, 96 F.3d 1262, 1264 (9th Cir. 1996) (en banc).  Federal appropriations riders related to medical marijuana did not require dismissal of the ancillary forfeiture proceedings.  Appellants contend that congressional appropriations riders, prohibiting the use of Department of Justice funds to prevent states from implementing their state medical marijuana laws, preclude the Government from participating in their ancillary forfeiture proceedings and compel a dismissal of the Government's claim to the properties.  The concerned appropriations riders, Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235 , Div. B., Title V, § 538, 128 Stat. 2130, 2217 (2014) ("section 538"); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Div. B., § 542, 129 Stat. 2242, 2232–33 (2015) ("section 542"), do not compel

11

dismissal.  Neither section 538 nor section 542 precludes the Government's participation in ancillary forfeiture proceedings because the proceedings do not prevent California from "implementing [its] own State laws that *authorize* the use, distribution, possession, or cultivation of medical marijuana."  *Olive v. Comm'r*, 792 F.3d 1146, 1150–51 (9th Cir. 2015) (quoting rider).  Contrary to Appellants' claim, because the riders are not applicable to these ancillary hearings, violations of the Anti-Deficiency Act, 31 U.S.C. § 1341 (a)(1)(A); *id.* § 1517(a), and Article I of the United States Constitution are not apparent.

Finally, Appellants contend that they are entitled to an evidentiary hearing to determine whether their claimed interests were tainted by the illegal sale of marijuana.  We have held that such a hearing is appropriate only where the government is spending funds for the "prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws."  *United States v. McIntosh*, 833 F.3d 1163, 1177 (9th Cir. 2016).  Appellants do not face prosecution, and at least two of the charges against Defendant were for lack of compliance with state law.

**AFFIRMED.**