[S. F. No. 2510.   Department Two.—March 10, 1903.]

FRANKIE WHITE, Respondent, v. J. M. COSTIGAN et al., Appellants.

ACTION BY DIVORCED WIFE—ENFORCEMENT OF TRUST—SUCCESSION TO HUSBAND'S INTEREST—ADMISSION OF PLEADINGS.—In an action by a divorced wife to enforce a conveyance from trustees of her husband, to whose rights she had succeeded by a receiver's sale, where the complaint alleges that she succeeded to whatever interest her

husband had in the premises, and is the owner thereof, and the averment is not denied, her ownership is admitted, and the validity of the receiver's sale is not involved.

Id.—Appeal from Order Denying New Trial—Review.—Upon appeal from an order denying a new trial, the sufficiency of the complaint and of the findings to support the judgment cannot be questioned.

Id.—Advance of Purchase Money—Title in Trust—Payment—Application of Credits.—Where the husband's brokers, with whom he had large accounts, advanced the purchase money to buy the land for the husband, and took the title in their own names in trust until repaid, and where it appears from their stated accounts with the husband assented to by him, that credits applied by the defendants upon the purchase money had fully paid and extinguished the indebtedness before the plaintiff succeeded to his interest, the defendants are bound by such application of credits, and are bound to convey to plaintiff upon her demand.

Id.—Trust—Statute of Limitations—Demand for Deed.—The defendants being trustees of the naked legal title to the land after the purchase money was fully paid, and the trust never having been at any time repudiated, the statute of limitations cannot begin to run until after a demand was made for a deed; and the defense of laches cannot be successfully urged if the action is brought within a reasonable time after the making of such demand.

Id.—Remedy—Enforcement of Conveyance.—The proper remedy for the plaintiff is to enforce a conveyance from the defendants, who hold the legal title in trust for the plaintiff as the successor in interest of her divorced husband. An action of ejectment is not a proper remedy, on the ground that the defendants were mortgagees, and that the husband paid the mortgage. They still thereafter held the legal title solely as trustees.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Henley & Costello, for Appellants.

W. H. Linforth, and W. T. Baggett, for Respondent.

THE COURT.—The suit is in equity, to compel the defendant Costigan to convey to plaintiff 640 acres of land situated in Kings County. Plaintiff had judgment, and defendants appeal from an order denying their motion for a new trial. No appeal is taken from the judgment. The action was com-

menced in Kings County, but was, by stipulation, transferred for trial to the city and county of San Francisco. The complaint sets forth in substance that White, the husband of plaintiff, entered into a contract with the defendants Costigan and the two Cohens, by which said defendants agreed to furnish White with the money to buy the land in controversy, and take the deed to said land in the names of said defendants; that on October 5, 1887, said defendants did as they had previously agreed,—took the deed and had it recorded in their own names as grantees; that thereafter, in a divorce case then pending between plaintiff and her said husband, White, said plaintiff was awarded a decree of divorce, a monthly allowance, and a further decree and judgment against said White for $100,000; that a receiver was duly appointed in said case, who, under the order of the court, seized and sold certain lands of said White, including the land here in controversy, to satisfy said decree and judgment; that plaintiff bid in and bought all said lands at said sale for $70,000; that said sale was confirmed by the court, and, under the order of the court, said receiver executed and delivered a deed to plaintiff, conveying to her all said lands, including the premises described in the complaint; and that plaintiff has ever since been, and now is, the owner of all the right, title, and interest of the said White in and to said lands, and entitled as such successor in interest to demand and receive of said defendants Costigan and the Cohens a deed conveying to her all of said 640 acres of land; that she had demanded such conveyance and defendants had refused to make the same.

1. Appellants' first contention for a reversal is founded on the decision of *White* v. *White*, 130 Cal. 597.[1] In that case it was in effect held that the sale of the property by the receiver was void and conveyed no title. But still we cannot see how that case can control our action in this case on the record before us. The allegations of plaintiff's complaint to the effect that she succeeded to whatever interest White had in the land are not denied, and must therefore be treated as admitted by defendants. Also, the findings are, that the allegations of the complaint are true. There is no demurrer to the complaint and no appeal from the judgment. On an appeal only from the order denying a new trial, the sufficiency

[1] 80 Am. St. Rep. 150.

of the complaint cannot be inquired into (*Moore* v. *Douglas,* 132 Cal. 399); nor can we question the sufficiency of the findings to support the judgment. (*Reclamation Dist.* v. *Thisby,* 131 Cal. 572.) The finding on the subject also being in accord with the admissions of the pleadings, we are precluded by the record on this appeal to say that the plaintiff did not succeed to White's title in the property.

2. It is next contended that White did not pay Costigan & Co. for the land, and that consequently neither he nor his successor in interest, the plaintiff, had any right to a conveyance. The evidence that the indebtedness incurred by White, on account of the payment by Costigan et al. of the purchase price of the land, was paid off and discharged may be found in the accounts as kept by said Costigan et al. and in their subsequent conduct in relation thereto. Costigan et al. had been engaged in business as commission merchants in San Francisco for some time, and White, who seems to have been a sheep-raiser and hop-grower, had been dealing with them, forwarding to them his hops, wool, etc., receiving credit for the same, and obtaining in return such money and supplies as were needed in his business. White, desiring to purchase the land in controversy, applied to Costigan et al. for the money, and it was agreed between them substantially as alleged in the complaint. Costigan et al. bought and paid for the land, took the deed to themselves, and charged the purchase price thereof to White in the running account between them. Thereafter, and long before the sale to Mrs. White, White was credited with numerous items of wool, hops, etc., from time to time on this same running account, amounting in the aggregate to upwards of a hundred thousand dollars. During all this time numerous items for supplies, cash furnished, money paid for alimony, and attorneys' fees were charged on the other side of said account. At intervals of every six months itemized accounts were by said defendants served upon White, showing these debits with the accompanying credits, and the balance struck, showing the balance due from White to Costigan et al., and interest charged on this balance. And White testifies: "I never objected to the manner in which he credited those payments in his semi-annual statements." Subsequent to the service of the semi-annual account embracing the item charged on account of the land, credits

were given far in excess of the balance shown to be due by the said semi-annual account, and other semi-annual accounts were thereafter served as before and retained by White without any objection thereto. We think this shows an application of the later credits by Costigan et al. to the discharge of the preceding balances, and the consent thereto by White. Such is the legal conclusion to be drawn from the facts disclosed. (*Simpson* v. *Ingham,* 2 Barn. & C. 65; Munger on Application of Payments, p. 41.) The creditors having thus once made the application, could not thereafter change it, but were bound by it. In *Jones* v. *United States,* 7 How. 681, the supreme court of the United States holds: "Where a running account is kept at the post-office department between the United States and a postmaster, in which all postages are charged to him, and credit is given for all payments, this amounts to an election by the creditor to apply the payments as they are successively made, to the extinguishment of the preceding balances." The court also held that the creditor was bound by the application thus made, quoting from the opinion of Chief Justice Marshall, in *Mayor of Alexandria* v. *Patton,* 4 Cranch, 320, as follows: "It is a clear principle of law that a person owing money on two several accounts, as upon a bond and simple contract, may elect to apply his payments to which account he pleases, but if he fails to make the application, the election passes from him to the creditor. No principle is recollected which obliges the creditor to make the election immediately. After having made it, he is bound by it." (See, also, *Armitage* v. *Saunders,* 94 Mich. 482; *Truscott* v. *King,* 6 N. Y. 147; Benjamin on Sales, 3d Am. ed., sec. 748.) It seems clear, then, that the money furnished White for the land was repaid, and the indebtedness of White on account of it extinguished long before Mrs White succeeded to the interest of White; and that, this indebtedness being paid, Costigan et al. retained no further interest in the land, and should have conveyed it to Mrs. White on the demand made.

3. It is clear, also, on the facts presented, that there was no ground upon which to invoke laches or the statute of limitations as a defense to the action. The relation between the parties was that of trustee and *cestui que trust.* White, in effect, furnished the money to buy the land, and Costigan et

al. paid for it with White's money, and took the deed in their own names. After the payment by White of the amount advanced for the purchase of the land, Costigan et al. had no further right in the land, except that they held the legal title in trust for White. Costigan admits in his testimony that he held the land all the time for White, and there is nothing to show that the trust was at any time even attempted to be repudiated by any of the parties up to the time of the demand for a deed by Mrs. White. The cause of action here relied on did not arise until such demand, and the statute of limitations could not begin to run against it until it arose. And . . . for the same reason the plaintiff could not be charged with laches in bringing her action as long as no foundation for such action was in existence. The foregoing is admitted by appellants themselves when they say in their brief: "We do not undertake to deny that if a trust is once established, and it is acted upon continuously by the parties and is recognized by acts and declarations, the trustee showing by his conduct or acts that he regards himself as a trustee and is holding the property for the *cestui que trust,* that in such case the statute of limitations would not run, nor could the defense of laches be successfully urged."

Nor is there anything in the claim that plaintiff has mistaken her remedy, and should have sued in ejectment. This claim is based upon the erroneous assumption that after repayment of the purchase price of the land the legal title passed at once to White. The legal title is now just where it was when the transfer was first made; it is, and was, in Costigan et al., and they hold it in trust for the plaintiff, who is the successor to the rights of White. The relation between the parties was a trust relation, and not a *mere* mortgage relation, as contended by appellant. The payment of the purchase price by one and the transfer to the other established a "resulting trust." (Civ. Code, sec. 853; *Campbell* v. *Freeman,* 99 Cal. 546.) When the purchase price advanced by Costigan et al. had been repaid by White, the mortgage feature of the transaction was extinguished and eliminated, and thereafter the land was held by them, not as mortgagees at all, but only as trustees.

The order denying a new trial is affirmed.